# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                 Case No. 05-CR-04

ROBERT MICHAEL HAWPETOSS,

        Defendant.

## ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL

      This case is before me on Defendant Robert M. Hawpetoss' Rule 29 motion for judgment of acquittal as to various counts of the eight-count indictment at the close of the government's evidence and again at the close of all the evidence at the end of the trial. *See* Fed. R. Crim P. 29(a). All eight counts of the indictment charged Hawpetoss with aggravated sexual abuse of a child on the Menominee Indian Reservation in violation of 18 U.S.C. §§ 1153(a) and 2241. I denied Hawpetoss' motion as to three of the counts at the time of trial, but reserved ruling on the others. All eight counts were then submitted to the jury as charged in the indictment with the exception of count two, which was submitted as a lesser included offense of abusive sexual contact in violation of 18 U.S.C. § 2244(a). The jury found Hawpetoss guilty on all eight counts, and the parties have now submitted briefs in support of their respective positions. The case is now ripe for decision of those issues upon which I reserved ruling. For the reasons that follow, Hawpetoss' motion for judgment of acquittal will be granted as to count two but denied as to the remaining counts.

## BACKGROUND

This case began with an indictment charging Hawpetoss with a single count of attempted sexual abuse of a child. On September 18, 1999, eight-year-old Madeline O. reported to Menominee Tribal Police that she had been attacked by Hawpetoss as she was walking with him along a gravel road. She and Hawpetoss were going to get help after the truck in which they had been riding with her mother and her mother's boyfriend went off the road and broke down. The Tribal Police were unable to locate Hawpetoss at the time of the report, however, as he had left the reservation. He ultimately fled the State and assumed another name. Four years later, after he was arrested in Green Bay, the case was presented to the grand jury, and an indictment was returned.

At around the same time, the government apparently discovered that Hawpetoss' now adult stepchildren, Donovan S. and Feather B., had reported to the Tribal Police in the mid-1990's that they had been repeatedly sexually assaulted by Hawpetoss when they lived with him and their mother on the Reservation throughout the 1980's and into the 1990's. The government returned to the grand jury and obtained a superseding indictment adding the additional counts relating to Hawpetoss' step-children.[1]

Of the eight counts in the second superseding indictment, only count one involving Madeline O. alleged a specific date on or about which the offense occurred. Counts two and three alleged that Hawpetoss had engaged in sexual acts with Donovan S., his step-son. Count two alleged that the offense occurred sometime between approximately November 30, 1985, and September of 1986,

---

[1] The First Superseding Indictment contained nine counts. The government later returned to the grand jury a third time and obtained a Second Superseding Indictment in response to the defendant's motion to dismiss on statute of limitations grounds. The Second Superseding Indictment omitted one count and narrowed the time of offense for another.

2

and count three was alleged to have occurred sometime during the summer of 1987. Counts four

through seven alleged that Hawpetoss had engaged in sexual acts with his step-daughter Feather B.

during the winters of the years 1985 through 1988, respectively. Count eight alleged a sexual act

with F.B. during the summer of 1993.

Prior to trial, Hawpetoss moved to dismiss counts two through eight of the indictment on

the ground they were barred by the statute of limitations and for lack of specificity as to the times

of the alleged offenses. Alternatively, Hawpetoss sought a bill of particulars narrowing the time

period in which the offenses were alleged to have occurred. By order dated June 7, 2005 (docket

# 60), I denied the motion to dismiss on statute of limitations grounds or for lack of specificity, but

directed the government to clarify what was meant by "winter" of a particular year, noting that

winter runs from December of one year to March of the next. The government responded by filing

a bill of particulars in which it clarified that winter was intended to mean the cold season on the

Menominee Reservation extending from roughly early November of the year alleged to late March

of the next year.[2] With this understanding, the case proceeded to trial on all eight counts.

At trial, both Donovan S. and Feather B., now both adults age thirty and twenty-six

respectively, recounted a history of repeated sexual abuse by Hawpetoss throughout the time they

lived with him on the Menominee Indian Reservation. However, neither testified with any degree

of specificity concerning the time of the incidents alleged in the indictment. Donovan testified in

detail concerning the first time he was sexually assaulted by Hawpetoss, approximately two to three

months after he came to live with his mother and Hawpetoss on the Reservation. Donovan testified

---

[2] As to count four, the period was limited to after December 1, 1985, to exclude any offenses that were barred by the statute of limitations.

that Hawpetoss forced his penis in Donovan's mouth and then simulated anal sex by rubbing his penis between his buttocks. (Tr. 409-10.) But this first incident described by Donovan was outside the statute of limitations. With respect to the two offenses against Donovan alleged in the indictment, Donovan was considerably less clear. When asked how many times Hawpetoss molested him, Donovan testified:

> A. I'd say about, it happened at least ten times.
>
> Q. Can you tell me whether or not it happened continuously throughout the years you were there?
>
> A. You know, there was specific incidents that I remember, but there was a lot, I was so terrified and panicked that I had blocked out, you know what I'm saying, I can't – it's hard for me to remember.
>
> Q. To remember the details?
>
> A. Yes.

(Tr. 414.)

To the extent the testimony had any relation to count two, Donovan testified that he recalled an incident during the winter when he was eleven years old when Hawpetoss dragged him down the stairs to the basement of the house in which they were living and forced Donovan to masturbate him by rubbing his penis with his hand until he ejaculated. (Tr. 416-17.) He recounted no other incident that occurred when he was eleven. As to count three, Donovan testified to an incident that occurred when he was twelve in which Hawpetoss woke him up, drove him to an old logging road, put a knife to his neck and threatened to kill him if he did not suck his penis. (Tr. 417.) Donovan also acknowledged that this incident occurred during the summer after he had turned twelve. (Tr. 424-25.)

4

The testimony of Feather B. was likewise vague and indefinite as to the time of the offenses alleged in the indictment. Feather testified that beginning when she was four years old, and continuing until she was nine, Hawpetoss repeatedly placed his penis in her mouth as often as three times a week when her mother was not around. (Tr. 450-54.) Feather testified that the incidents would occur mostly in the winter time. She explained that she knew it occurred more often at that time "because I really couldn't be outside because it was cold then, I mean, we only got to go out when it was real nice, but we didn't get to go out when it was real cold." (Tr. 462.)

Feather did testify with specificity about the offense alleged in count eight of the indictment. She testified that she left the reservation with her mother and brothers when she was nine and moved to Minnesota. She came back to visit relatives in August of 1993. One day, Hawpetoss came to the home of her cousin where she was staying and told Feather that her mother was coming to pick her up in two hours. Feather testified that Hawpetoss offered to drive her and her younger brother to meet her, but instead drove her to his house where he threatened to kill her if she did not have sexual intercourse with him. Feather testified that Hawpetoss told her "He wanted to make me a woman." (Tr. 467.) With her little brother watching, Feather's step-father then had vaginal intercourse with her and afterwards drove her back to where he had picked her up. (Tr. 464-68.) As to counts four through seven, however, Feather did not describe any one particular assault or relate it to a specific place or date. She simply testified in general to the manner in which Hawpetoss assaulted her and stated that it occurred more often in the winter when it was cold.

At the close of the government's evidence, Hawpetoss moved for judgment of acquittal pursuant to Rule 29(a) on the ground that the evidence was insufficient to sustain a conviction on any of the eight counts, but with particular emphasis on counts two through eight. Hawpetoss

5

argued that the evidence presented by the government was simply too weak to allow any reasonable jury to find Hawpetoss guilty beyond a reasonable doubt.

The government conceded that the evidence was insufficient to support a guilty verdict on the offense of aggravated sexual abuse of a child as to count two, since Donovan had not testified that Hawpetoss had engaged in a sexual act with him during the relevant time period. But rather than dismiss count two, the government requested that the jury be instructed on the offense of abusive sexual contact in violation of 18 U.S.C. § 2244(1), which it claimed was a lesser included offense of aggravated sexual abuse of a child. As applicable here, abusive sexual contact is committed by one who has sexual contact with a child who has not attained the age of twelve years. The government argued that the evidence was sufficient to allow a jury to find that Hawpetoss had abusive sexual contact with Donovan during the period described in count two, and since abusive sexual contact is necessarily included in aggravated sexual abuse of a child, there was no reason to dismiss count two.

Notwithstanding Hawpetoss' contention that abusive sexual contact was not a lesser included offense of count two, I ultimately granted the government's request to submit the charge of abusive sexual contact in place of count two, but reserved ruling on Hawpetoss' motion for judgment of acquittal on that count, as well as counts four through seven. I denied the motion as to counts one, three and eight, however, finding that the evidence was sufficient as to each of those counts. I now turn to the issues I took under advisement at the time of trial.

## DISCUSSION

As the Seventh Circuit has repeatedly cautioned, "Rule 29 does not authorize the judge to play thirteenth juror." *United States v. Genova*, 333 F.3d 750, 757 (7th Cir.2003). "A motion for judgment of acquittal should only be granted if there is insufficient evidence to sustain the jury's findings." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir.2002). Under this standard, a trial judge should reverse a jury verdict only if, viewing the evidence in the light most favorable to the prosecution, the record contains no evidence on which a rational jury could have returned a guilty verdict. *Id.* at 569–70; *United States v. Murphy*, 406 F.3d 857, 861 (7th Cir. 2005). In addition, because a defendant may be found guilty of a lesser offense necessarily included in the offense charged in the indictment, Fed. R. Crim. P. 31(c), a court confronted with a Rule 29 motion at the close of the evidence must also consider whether the evidence would be sufficient to sustain a conviction of such a lesser offense. *United States v. Wood*, 207 F.3d 1222, 1229 (10th Cir. 2000).

Here, the government did not dispute Hawpetoss' claim that the evidence was insufficient to sustain a conviction on count two of the indictment because Donovan did not testify that Hawpetoss engaged in a sexual act with him during the relevant time period. Instead, the government claimed that it was entitled to an instruction on a charge of abusive sexual contact, which it claims is a lesser included offense of aggravated sexual abuse of a child. Hawpetoss, on the other hand, contends that count two should be dismissed because the evidence presented by the government did not match the charge in the indictment and abusive sexual contact is not a lesser included offense of aggravated sexual abuse of a child. As to counts four through seven, Hawpetoss argues the evidence was so hopelessly confused and general that it is insufficient as a matter of law

7

to sustain any one of the convictions for which it was offered. I will first address Hawpetoss'
argument as to count two.

### A. Count Two

As a general rule, the government may not amend the indictment to seek a conviction on a
charge different from that issued by the grand jury. *United States v. Leichtnam*, 948 F.2d 370, 376
(7th Cir. 1991). This is because of the Fifth Amendment right of a defendant not to be prosecuted
"unless on a presentment or indictment of a Grand Jury." However, the general rule does not
prevent the government from seeking to narrow the charges in the indictment by dropping certain
counts, proving a more limited conspiracy than the one charged or substituting a lesser included
offense. "[A] conviction will not ordinarily be upset because the proof at trial or the jury
instructions cover fewer offenses than the indictment charged or only narrower or 'lesser included'
offenses, at least not without specific evidence that any departure from the strict terms of the
indictment either surprised the defendant and prejudiced his or her defense or created a risk of
double jeopardy." *Leichtnam*, 948 F.2d at 377. Thus, under Rule 31(c) of the Federal Rules of
Criminal Procedure, a jury may find a defendant guilty of "an offense necessarily included in the
offense charged." *United States v. McCullough*, 348 F.3d 620, 624 (7th Cir.2003).

In *Schmuck v. United States*, 489 U.S. 705 (1989), the Supreme Court adopted the "elements
test" for determining whether one offense is necessarily included in another. Under this test, "one
offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset
of the elements of the charged offense. Where the lesser offense requires an element not required
for the greater offense, no instruction is to be given under Rule 31(c)." 489 U.S. at 716. The
question presented here, then, is whether the elements of the offense of abusive sexual contact are

8

a subset of the elements of aggravated sexual abuse of a child.  If the crime of abusive sexual contact contains an element that aggravated sexual abuse of a  child does not, then abusive sexual contact is not a lesser included and count two should have been dismissed.

To sustain the charge of aggravated sexual abuse in violation of 18 U.S.C. § 2241(c) as charged in count two, the government was required to prove that Hawpetoss engaged in a sexual act with Donovan after November 30,  1985, and prior to his twelfth birthday.  The term "sexual act", as used in Chapter 109A of Title 18, means:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2).  The offense of abusive sexual contact in violation of 18 U.S.C. § 2244(1), on the other hand, required that instead of engaging in a sexual act with Donovan, Hawpetoss had sexual contact with him during the relevant time period.  The term "sexual contact", as used in Chapter 109A, means:

> the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(3).

It is clear from a careful review of 18 U.S.C. § 2246(2) and (3) that the offense of abusive sexual contact contains an element that the offense of aggravated sexual abuse does not, at least as

9

the more serious crime was charged here. Count two charged Hawpetoss with engaging in the specific sexual act of forcing Donovan to place his mouth on Hawpetoss' penis. There is no intent element of the crime of aggravated sexual abuse as charged in count two.[3] The sexual contact required for the crime of abusive sexual contact, on the other hand, requires proof that the defendant acted "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). In light of this difference, application of the "elements test" leads to the conclusion that abusive sexual contact is not a lesser included offense of aggravated sexual abuse as charged in count two of the indictment.

Although the Seventh Circuit has not addressed the question, the Second, Ninth and Tenth Circuits have all held under similar circumstances that abusive sexual contact is not a lesser included offense. *See United States v. Hourihan*, 66 F.3d 458, 465 (2d Cir. 1995) ("[T]he offense of abusive sexual contact was not encompassed within the parameters of the offense of attempted sexual abuse so as to constitute a lesser-included offense."); *United States v. Sneezer*, 900 F.2d 177, 179 (9th Cir. 1990) ("Thus, abusive sexual contact requires a specific intent not required for attempted sexual abuse and attempted aggravated sexual abuse."); *United States v. Castillo*, 140 F.3d 874, 886 (10th Cir. 1998) ("Because section 2244 contains a specific intent element that sections 2242 and 2243 do not have, the crime of abusive sexual contact is not a lesser included offense of the crime of sexual abuse.").

Only the Eighth Circuit has ruled otherwise. In *United States v. Demarrias*, 876 F.2d 674, 676 (8th Cir. 1989), the Eighth Circuit held that abusive sexual contact is a lesser included crime

---

[3] Intent is an element of aggravated sexual assault where the sexual act alleged is "penetration of the genital or anal opening of another" or the "intentional touching, not through clothing, of the genitalia of a person who has not attained the age of 16 years." See 18 U.S.C. § 2246(2)(C) and (D).

of aggravated sexual abuse of a child because the intent element of sexual contact is inherent in the definition of sexual act in § 2246(2)(A) and (B). The court explained:

> Subsections (A) and (B) describe conduct which needs no explicit intent element, because one who engages in such contact inherently intends to do so for sexual purposes. Subsection (C), however, covers conduct that is not inherently sexual, but that may be for a sexual purpose, depending upon the intent of the actor. Demarrias' claim that intent is irrelevant for determining whether a sexual act has taken place is therefore without merit. Each subsection considers intent, but (A) and (B) imply it from the nature of the contact. A sexual act necessarily requires a sexual contact, since none of the acts described by section 2245(2) can be accomplished without an intentional touching with sexual intent.

*Id.*

But as the Tenth Circuit noted in *Castillo*, "[t]his reasoning ... contradicts the principle that '[t]o be necessarily included in the offense charged, the lesser offense must not only be part of the greater in fact, but it must be embraced within the legal definition of the greater as a part thereof.'" 140 F.3d at 886 (quoting *Schmuck*, 489 U.S. at 719). In *Schmuck*, the Court rejected the inherent relationship approach for lesser included offenses and adopted the elements test which it found grounded in the language and history of Rule 31(c) and because the elements test provides clearer guidance and certainty both to the parties and the court:

> Because the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial, the elements approach permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly. The objective elements approach, moreover, promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference.

489 U.S. at 720-21. In contrast, the Court found the inherent relationship approach "rife with the potential for confusion." *Id.* at 721.

11

In my view, the Eighth Circuit's decision in *Demarrias* represents an application of the inherent relationship approach explicitly rejected by the Court in *Schmuck*. Because the crime of abusive sexual contact includes an element that the crime of aggravated sexual abuse of a child as charged in count two of the indictment did not, I agree with the Second, Ninth and Tenth Circuits and conclude that under the "elements test" it is not a lesser included offense. It therefore follows that abusive sexual contact should not have been submitted to the jury and, because the evidence presented was insufficient to support a conviction for the offense of aggravated sexual abuse charged in count two, Hawpetoss' Rule 29 motion for judgment of acquittal as to that count should be granted.

### B. Counts Four Through Seven

Hawpetoss' challenge to counts four through seven raises the more difficult issue of whether a defendant can be lawfully convicted on the testimony of a witness who is unable to recall the specific details of any one assault and instead testifies generally about a pattern of assaults that occurred over a long period of time. While rarely if ever addressed in the federal courts, the issue has received careful consideration in the state courts, particularly those of the State of California, in cases involving the so-called "resident child molester." *See California v. Jones*, 792 P.2d 643 (Cal. 1990), and *California v. Van Hoek*, 246 Cal. Rptr. 352 (Ct. App. 1988). As the *Jones* court explained,

> the so-called "resident child molester" is a person who lives with his victim or has continuous access to him or her. In such cases, the victim typically testifies to repeated acts of molestation occurring over a substantial period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults.

12

792 P.2d at 645. The difficulty presented in such cases is clear. On the one hand, prosecutions based on such nonspecific or generic testimony are claimed to deprive the defendant of due process by preventing him from effectively defending against such charges, and by precluding a unanimous jury verdict as to each count in the indictment. *See, e.g., California v. Van Hoek*, 246 Cal. Rptr. at 356-57. On the other hand, "testimony describing a series of essentially indistinguishable acts of molestation is frequently the only testimony forthcoming from the victim. To hold that such testimony, however credible and substantial, is inadequate to support molestation charges would anomalously favor the offender who subjects his victim to repeated or continuous assaults." *Jones*, 792 P.2d at 645.

This is precisely the situation presented here. Feather testified that over an approximately five-year period, Hawpetoss repeatedly placed his penis in her mouth as often as three times a week when her mother was not around. (Tr. 450-454.) Because he was married to Feather's mother and lived in the same house with her, Hawpetoss had continuous access to Feather. And because of the frequency with which the incidents occurred and her age at the time, the government contends that Feather is unable to provide specific details as to any one offense. This difficulty is obviously exacerbated by the amount of time that has passed since the Feather last lived with Hawpetoss.[4]

But the fact that an alleged victim of a crime has difficulty recalling the specific details is not an excuse to ignore an accused's right to a fair trial and the constitutional guarantees intended to insure that it is fair, including the right to an acquittal absent sufficient evidence to support the

---

[4] A number of States, including Wisconsin, have attempted to avoid this difficulty by creating a new offense of repeated acts of sexual assault of the same child, which is defined as three or more sexual assaults of the same child within a specified period of time. The statute specifically provides that the jury must unanimously agree that the defendant committed at least three sexual assaults of the child, but need not agree on which acts constitute the requisite number. *See* Wis. Stat. 948.025 (2003-04).

Case 1:05-cr-00004-WCG   Filed 09/09/05   Page 13 of 25   Document 100

conviction. It is to these considerations that Hawpetoss appeals in support of his argument that the evidence presented by the government was insufficient to support a conviction on counts four through eight. He contends that the evidence was factually and legally insufficient to support a conviction and that allowing the convictions to stand would violate his rights under the Fifth and Sixth Amendments. It is to those specific challenges that I now turn.

Although somewhat overlapping and interconnected with his previous challenges to the indictment, Hawpetoss' argument, like that of the defendant in *Jones*, is that the evidence adduced by the government was insufficient to allow a reasonable jury to find beyond a reasonable doubt that he committed the specific crimes charged in counts four through seven of the indictment. In essence, he argues that he was entitled to notice of the specific crimes he was accused of committing and the date on which, or a reasonably limited time period within which, he was alleged to have committed each crime. Moreover, before he could be lawfully convicted, the government was required to prove beyond a reasonable doubt that he committed the specific crimes charged in the indictment and a jury was required to agree unanimously that the government had met its burden as to each crime. Because the testimony offered by the government in support of counts four through seven was nonspecific and general, Hawpetoss argues it cannot support a conviction for the specific crimes alleged in those counts.

Hawpetoss further argues that allowing the jury to convict on counts four through seven based on the nonspecific and generic testimony elicited by the government deprived him of his Fifth Amendment right to face felony prosecution only for those crimes framed by a grand jury. It also deprived him of his due process right to present a defense and his Sixth Amendment right to unanimous jury verdict. His ability to present a defense, he contends, was hampered by the fact he

14

had no notice of the specific date he is alleged to have committed the offense and thus had no opportunity to present an alibi or other defense as the circumstances might permit. And his right to a unanimous jury verdict was violated since without testimony as to a specific offense, unanimity over whether that offense has been proven beyond a reasonable doubt is impossible. For each and all of these reasons, Hawpetoss argues that counts four through seven should be dismissed.

## 1. Insufficiency of Evidence

Hawpetoss first argues that the evidence was legally and factually insufficient to support a conviction on counts four through seven. In support of his argument, Hawpetoss relies principally upon the Seventh Circuit's recent decision in *United States v. Ross*, 412 F.3d 771 (7th Cir. 2005), and the Supreme Court's decision in *Griffin v. United States*, 502 U.S. 46 (1991). *Ross* held that a variance of more than four years between the time of the offense alleged in the indictment and the proof at trial was more than allowable under the Fifth Amendment guarantee of indictment by grand jury. Although he acknowledges that the case is not directly on point, Hawpetoss argues that "the Court should use *Ross* as support for Hawpetoss' position that the dates introduced at trial do not match the dates in the indictment." (Def.'s Br. at 10.) Such a variance, Hawpetoss argues, "makes the proof insufficient, and requires dismissal of counts four through seven." (*Id.*)

I find *Ross* is inapposite to the issue before me. The problem with the counts challenged here is not a variance between the indictment and the proof adduced at trial. Each of the challenged counts charged that Hawpetoss engaged in a sexual act with Feather during the winter of the year specified. The bill of particulars clarified the term "winter" by identifying in terms of the months and years the time period covered by each count. Feather's testimony that Hawpetoss placed his penis in her mouth up to three times a week, especially during the winter when it was cold, over the

15

five-year period she lived with him on the Menominee Indian Reservation, including the four winters specified in the four challenged counts, constitutes evidence from which a jury could find that Hawpetoss committed the crime charged during the very time alleged. There was no variance between the times alleged in the indictment, as clarified in the bill of particulars, and the proof adduced at trial, let alone the four-year variance that *Ross* found excessive.

*Griffin* is likewise inapposite. *Griffin* held that a general verdict of guilty on a multi-object conspiracy charge need not be set aside solely because the evidence is insufficient to support a conviction as to one of the objects alleged. 502 U.S. at 56-57. In so ruling, *Griffin* relied upon the prevailing rule of *Turner v. United States*, 396 U.S. 398, 420 (1970), that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, ... the verdict stands if the evidence is sufficient with respect to any one of the acts." 502 U.S. at 56-57. Here, of course, Hawpetoss was not charged with a multi-object conspiracy or any other crime charged in the conjunctive. I find nothing in the language or holding of *Griffin* that is of help on the issue raised here.

This is not to say that Hawpetoss has not raised a substantial challenge to the sufficiency of the evidence as to counts four through seven. The fact that the cases cited by him have little if any relevance to the issue he has raised seems more indicative of the lack of federal authority on the issue than the strength of the challenge. There are few crimes, other than sexual abuse of children, where such problems arise, and since federal jurisdiction over such crimes is limited, it is not surprising that there is a dearth of federal authority on the question. As noted above, however, the issue has been addressed by the state courts that see many more sexual assault prosecutions. And

16

the state courts that have addressed the issue have generally concluded that generic testimony such as F.B.'s is sufficient to support a conviction.

In the previously cited case of *California v. Jones*, for example, the victim had been adopted by the defendant when he was ten years old. He testified that the defendant had first molested him about a month after he moved in with him and once or twice a month during the entire two-year period he lived with the defendant. Although the victim was able to provide some detail as to some counts, the court of appeals had concluded the evidence was insufficient to support convictions on several counts because the victim "could not describe the specific incidents or dates to enable the jury to differentiate among the various incidents." 792 P.2d at 647. Drawing on the state courts' long history of dealing with the issue, the California Supreme Court reversed, holding that generic testimony that lacked specificity as to the details of particular incidents could support a conviction. In so ruling, the court observed that "even generic testimony (e.g., an act of intercourse 'once a month for three years") outlines a series of *specific*, albeit undifferentiated, incidents *each* of which could support a separate criminal sanction." *Id.* at 654 (emphasis original). Noting further that it was the jury's role to determine the credibility of the witnesses and that recent studies had undermined the notion that child witnesses were inherently unreliable, the court rejected the contention that the victim's failure to specify precise date, time, place or circumstance rendered generic testimony insufficient:

> The victim, of course, must describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g. lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., "twice a month" or "every time we went camping"). Finally, the victim must be able to describe the general time period

17

> in which these acts occurred (e.g., "the summer before my fourth grade," or "during each Sunday morning after he came to live with us") to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction.

792 P.2d at 655-56. Several other state courts that have addressed the issue have followed *Jones*' lead. *See North Dakota v. Vance*, 537 N.W.2d 545 (N.D. 1995) (8-year-old child's testimony to defendant's "bad touches" about 3 times a week, corroborated by medical testimony sufficient); *Massachusetts v. Kirkpatrick*, 668 N.E.2d 790 (Mass. 1996) (victim's testimony that defendant have sexual contact with her approximately 3 times a week for two year period sufficient); *Washington v. Hayes*, 914 P.2d 788 (Wash. 1996) (daughter's generic testimony of sexual abuse 2 or 3 times a week sufficient to support convictions).

I agree with the analysis of these courts and conclude that the evidence presented here, while nonspecific and generic, was sufficient to sustain Hawpetoss' convictions for counts four through seven. Feather described the kind of acts with sufficient specificity to allow the jury to determine that the unlawful acts occurred. She also testified that they occurred where the family was living on the Menominee Indian Reservation. Based on her estimate of the frequency with which Hawpetoss assaulted her, there was sufficient evidence from which the jury could conclude that at least one such assault occurred during each of the charging periods alleged. Hawpetoss was free to challenge her testimony and attempt to bring out more detail, but even if she had no more detail to give, I conclude it was enough.

18

*2. Duplicity and Unanimous Jury*

Hawpetoss argues that the generic and nonspecific character of the evidence presented by the government in support of counts four through seven rendered those counts duplicitous and deprived him of his right to a unanimous jury verdict. A charge is duplicitous when two or more offenses are joined in a single count. *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996). Duplicitous charging is prohibited by Rule 8(a) of the Federal Rules of Criminal Procedure, which requires a separate count for each offense. *United States v. Berardi*, 675 F.2d 894, 897 n. 5 (7th Cir. 1982). "'The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both.'" *Marshall*, 75 F.3d at 1111 (7th Cir.1996) (quoting *United States v. Blandford*, 33 F.3d 685, 699 n. 17 (6th Cir.1994)). A duplicitous charge may also expose a defendant to other dangers including "improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from less than a unanimous verdict as to each separate offense." *Id.* Hawpetoss argues that each of these dangers is present in this case as a result of the failure of the government to specifically identify the particular offense that was charged in counts four through seven.

As Hawpetoss himself acknowledges, however, none of the challenged counts are truly duplicitous as that term has been defined by the courts. The prohibition of duplicitous charges is a pleading rule. 1A WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 3d § 142 at 15 (West 1999). The rule prohibits charging multiple offenses in a single count. There was no violation of that rule here. Each of the challenged counts alleges a single offense of aggravated sexual abuse

19

of a child during a specific period of time. The problem is not that the indictment joined multiple offenses in a single count; the problem instead is that Feather testified that multiple offenses occurred within the periods of time in which each of the charged offenses was alleged to have occurred. Because of the nature of the offense of child sexual abuse and the special evidentiary rules that apply in such cases, *see* Fed. R. Evid. 413 and 414, evidence of other acts of sexual abuse in addition to the charged offenses was admissible. But because of the number of offenses Feather claimed occurred during the period covered by each of the challenged counts and her inability to differentiate them, Hawpetoss argues that the same dangers exist.

Even when a charge contained in the indictment is duplicitous, however, it is not necessarily fatal unless the defendant is actually prejudiced. The Seventh Circuit has held that the risk of conviction in such cases by a jury that is not unanimous can be avoided by instructing the jury that it is required to agree as to which of the offenses included in the disputed count the defendant committed. *United States v. Buchmeier*, 255 F.3d 415, 425 (7th Cir. 2001); *see also United States v. Cherif*, 943 F.2d 692, 701 (7th Cir.1991) (explaining that the possibility that the defendant was convicted by a less than unanimous jury where a count of the indictment listed two unlawful acts in the same count could have been eliminated by an instruction requiring the jury to unanimously agree as to which act the defendant was guilty of committing). The jury was so instructed here. Jurors were told:

> Each count of the indictment charges the defendant with having committed a separate offense. Each count and the evidence relating to it should be considered separately, and a separate verdict should be returned as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to any other count. In addition, your verdict must be unanimous as to a particular offense within each count. In other words, for you to find the defendant guilty on any count, you must all agree as to the particular offense the defendant committed.

20

(Tr. 622; Jury Instr. at 16.) Jurors are generally presumed to follow the instructions of the court. *United States v. Banks*, 405 F.3d 559, 565 (7th Cir. 2005). This instruction gave specific protection to Hawpetoss' right to a unanimous verdict.[5]

Hawpetoss further argues, however, that "though told to be unanimous, this palliative instruction could not help the jury do their job when faced with the evidentiary glob present in counts four through seven. . . . [T]he jury could not make any specific findings of guilt for each of Counts Four through Seven because there were no specifics elicited in testimony." (Def.'s Br. at 18.) But this argument ignores the role that reason and inference play in a jury's search for the truth. It is true that the government offered no specific evidence of a particular offense within each of the time periods specified in counts four through seven. Yet, there was evidence from which a reasonable jury could infer that a particular offense occurred within the time period alleged in each of the challenged counts. Hawpetoss' argument is essentially a claim that because the evidence offered by the prosecution shows that he engaged in innumerable sexual acts with Feather, so many that she is unable to keep them separate, he must go free. Such a rule would "effectively insulate the most egregious child molesters from prosecution." *California v. Van Hoek*, 246 Cal. Rptr. at 354. Fortunately, there is no compelling authority to support it.

On this issue, too, state court decisions offer persuasive guidance. In *California v. Jones,* for example, the California Supreme Court stated in response to the same argument made by the defendant here:

---

[5] Although Hawpetoss does not raise the issue here, I also note that he was also protected from exposure to double jeopardy under the circumstances of this case. The government stipulated that it was precluded from prosecuting him for any offense against Feather B. or Donovan S. that occurred within the time periods alleged in the indictment. (Tr. 536.) *See Fawcett v Bablitch*, 962 F.2d 617, 618-19 (7th Cir. 1992).

> [W]e reject the contention that jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described.

792 P.2d at 658. Likewise, in *Massachusetts v. Kirkpatrick*, the Supreme Judicial Court of Massachusetts observed that "when, in a case of this kind, the decisive issue at trial is the credibility of the complainant, a jury will either believe that a consistent and repetitive pattern of abuse has occurred, of necessity encompassing a number of discrete acts, or they will disbelieve it." 668 N.E.2d at 794. The court concluded that under these circumstances, "the risk of a lack of unanimity . . . does not exist." *Id.* Also in accord are *Washington v. Hayes*, 914 P.2d at 795-96; and *Thomas v. Colorado*, 803 P.2d 144, 152-54 (Colo. 1990). *But see New York v. Keindl*, 502 N.E.2d 577, 582 (N.Y. 1986) (holding that multiplicity of acts encompassed in single counts made it virtually impossible to determine the particular act of sodomy or sexual abuse as to which the jury reached a unanimous verdict).

I am persuaded by the analysis of those state courts that have concluded that generic and nonspecific testimony of the type offered here does not render jury unanimity unattainable. Here, the jury was specifically instructed that they had to unanimously agree not only that the defendant was guilty, but also on the particular offense that he committed. In light of the presumption that a jury follows the court's instructions, I find no violation of Hawpetoss' right to a unanimous verdict.

*3. Notice and the Right to Present a Defense*

Hawpetoss also contends that the other dangers against which the prohibition of duplicitous charging is intended to protect became manifest in this case as a result of the character of the evidence presented. More specifically, he argues that the absence of specific dates, or at least more

22

narrow time periods, deprived him of fair notice of the charges against him and made it impossible for him to offer a defense. He argues that "[t]he second superseding indictment, the bill of particulars, and the government's case at trial created moving targets that Hawpetoss could not hit, much less choose between when attempting to present a defense." (Def.'s Br. at 20.)

To some extent, this argument repeats the argument made in support of Hawpetoss' pretrial motion to dismiss counts two through eight of the superseding indictment for failure to allege with sufficient specificity when the charged offenses allegedly occurred. I rejected the argument at that time, noting that in cases involving sexual abuse of young children, courts had allowed greater liberality in alleging the time of offense:

> Sexual abuse and sexual assaults of children are difficult crimes to detect and prosecute. Often there are no witnesses except the victim. The child may have been assaulted by a trusted relative or friend and not know who to turn to for assistance and consolation. The child may have been threatened and told not to tell anyone. Even absent a threat, the child might harbor a natural reluctance to reveal information regarding the assault. These circumstances many times serve to deter a child from coming forth immediately. As a result, exactness as to the events fades in memory. Young children cannot be held to an adult's ability to comprehend and recall dates and other specifics.

*State v. Fawcett*, 426 N.W.2d 91, 94 (Wis. Ct. App. 1988) (citations omitted). The fact that it would be difficult if not impossible to assert an alibi defense to a charge lacking greater specificity as to time, I held, "did not render the charge constitutionally deficient." (June 7, 2005 Order at 8.) I reach the same conclusion here, once again returning to *California v. Jones* for persuasive support.

In *Jones*, the court noted that "only infrequently can an alibi or identity defense be raised in resident child molester cases." 792 P.2d at 657. This follows simply from the fact that in cases such as this, the defendant lives in the same home as the victim and has continuous access to her. Unless the law required the defendant be provided the exact date and time of offense alleged, it is

23

difficult to imagine a defendant claiming either mistaken identity or alibi as a defense in light the close relationship between the parties and the nature of the crime alleged. Thus, the trial of such cases usually centers on a basic credibility issue – the victim testifies to a series of molestations, and the defendant denies that any wrongful touching occurred. That is exactly what occurred here. Feather testified that Hawpetoss repeatedly forced her to engage in sexual acts with him over a five-year period, and Hawpetoss denied that he had ever done so, even once. (Tr. 556.) The jury obviously believed Feather and the other witnesses who testified he had sexually abused them in a similar manner, and disbelieved Hawpetoss. However, this does not mean Hawpetoss was denied the right to present a defense. True, Hawpetoss was unable to assert an alibi defense, but that is true in any case in which the defendant has no evidence to show that he was somewhere else at the time the crime was committed. Inability to assert an alibi defense is not a denial of the right to assert a defense. A defendant does not have a constitutional right to assert an alibi defense in every case; an alibi defense can be asserted only in those cases in which the facts support such a defense. Here, as in many cases, the facts simply did not support alibi as a defense.

Hawpetoss took the stand and denied he had sexually assaulted Feather or any of the other four individuals who swore he had abused them. His attorney argued to the jury in closing that the evidence presented by the government failed to establish his guilt beyond a reasonable doubt. Counsel pointed out discrepancies and the overall vagueness in the testimony of the government witnesses, the failure of those witnesses to report the offenses for years, possible motives they might have for fabricating the accusations against Hawpetoss, and the lack of any corroborating evidence for any of the specific counts. (Tr. 655-65.) This was his defense. It was not enough to overcome the compelling testimony, often accompanied by tears, clear indications of emotional suffering, and

24

other indicia of reliability, of the witnesses who testified against him. The fact that his defense did not succeed, however, is not evidence that he was denied the opportunity to present it. Hawpetoss did present a defense; it simply failed.

## CONCLUSION

In sum, I conclude that Hawpetoss' constitutional rights were not violated and that the evidence presented was sufficient to support his conviction on counts four through seven of the second superseding indictment. Accordingly, Hawpetoss' Rule 29 motion for judgment of acquittal on counts four through seven is denied. The evidence was not sufficient to support a conviction on count two, however, and because the offense of abusive sexual contact is not included in the offense of aggravated sexual abuse of a child, it should not have been submitted to the jury. Hawpetoss' motion is therefore granted as to count two, and that count is hereby dismissed with prejudice.

**SO ORDERED.**

Dated this __9th___ day of September, 2005.

_s/ William C. Griesbach_____
William C. Griesbach
United States District Judge